# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

LINDA ISELA MUNOZ,

      Plaintiff,

v.                                       Civ. No. 20-245 GJF

KILOLO KIJAKAZI, *Acting Commissioner*
*of the Social Security Administration*,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's "Motion to Reverse and Remand for Rehearing, With Supporting Memorandum" [ECF 24] ("Motion"). The Motion is fully briefed. ECF 25 (Response); ECF 27 (Reply). Having meticulously reviewed the entire record and the parties' briefing, and for the reasons articulated below, the Court will **AFFIRM** the Commissioner's final decision, **DENY** the Motion, and **DISMISS** this case **WITH PREJUDICE**.

## I.  BACKGROUND

Linda Munoz ("Plaintiff") was born in 1981. Administrative Record ("AR") at 133. Plaintiff passed the General Educational Development Test ("GED") and completed some college course work. *Id.* at 74. Plaintiff has previously worked as a cashier, housekeeper, receptionist, and daycare teacher assistant. *Id.* at 364. Plaintiff lives with her three children and several pets. *Id.* at 74, 1800.[1] Plaintiff applied for Disability Insurance Benefits in November 2013, *id.* at 321, alleging that she had been disabled since August 2012 because of fibromyalgia,[2] chronic knee pain,

---

[1]  In 2017, Plaintiff testified that she did not have any pets, but in 2018 Plaintiff told a healthcare provider that she had two dogs and six cats. AR at 75, 1800.

[2]  "Fibromyalgia is a disorder characterized by widespread musculoskeletal pain accompanied by fatigue, sleep, memory and mood issues." Fibromyalgia, Mayo Clinic (Oct. 7, 2020), https://www.mayoclinic.org/diseases-conditions/fibromyalgia/symptoms-causes/syc-20354780.

post-traumatic stress disorder, depression, anxiety, sleep apnea, and carpal tunnel syndrome.[3] *Id.* at 133–34. The Commissioner denied Plaintiff's application initially and on reconsideration. *Id.* at 131–65.

At Plaintiff's request, Administrative Law Judge ("ALJ") Michael Leppala held a hearing on this matter in May 2017. *Id.* at 68. Based on the record before him, the ALJ found that Plaintiff was not disabled. *Id.* at 181. Plaintiff appealed the ALJ's 2017 decision to the Appeals Council. *Id.* at 261. The Appeals Council granted Plaintiff's request for review and remanded the case back to the ALJ. *Id.* at 190–91. In March 2019, ALJ Leppala held another hearing on the matter, *id.* at 37–64, and again found that Plaintiff was "not under a disability, as defined in the Social Security Act, at any time from August 1, 2012, the alleged onset date, through March 31, 2018, the date last insured." *Id.* at 29. Plaintiff again appealed the ALJ's decision to the Appeals Council, which this time denied her request for review. *Id.* at 1. Plaintiff timely appealed the ALJ's second hearing decision to this Court. *See id.* at 1–3 (advising Plaintiff that she had 60 days from January 22, 2020, to appeal the ALJ's decision); ECF 1 at 1 (Plaintiff appealing the ALJ's decision on March 19, 2020).

## II.   PLAINTIFF'S ARGUMENTS[4]

Plaintiff argues that the ALJ made four errors in determining Plaintiff's residual functional capacity ("RFC") at step four of the sequential evaluation process. First, Plaintiff contends that the

---

[3] "Carpal tunnel syndrome is caused by pressure on the median nerve. … When the median nerve is compressed, the symptoms can include numbness, tingling and weakness in the hand and arm." Carpal Tunnel Syndrome, Mayo Clinic (July 14, 2021), https://www.mayoclinic.org/diseases-conditions/carpal-tunnel-syndrome/symptoms-causes/syc-20355603.

[4] Accompanying Plaintiff's brief is an exhibit detailing some of the instances in which ALJ Leppala was been reversed by other judges. ECF 24-1. In November 2020, the Honorable Kevin Sweazea admonished plaintiff's counsel for filing a similar exhibit. *Jaramillo v. Saul*, No. 1:19-CV-00488-KRS, 2020 WL 6781789, at *4 n.4 (D.N.M. Nov. 18, 2018). The Court notes that Plaintiff filed the instant Motion in December 2020, ECF 24, *after* Judge Sweazea "encouraged [Plaintiff's counsel] not to repeat this approach in future filings." *Id.* The undersigned agrees with Judge Sweazea that such an exhibit represents only "a tiny fraction of the thousands of adjudications by the ALJ." *Id.* Moreover, as with

ALJ failed to properly consider the medical opinion evidence in the record. ECF 24 at 13–16. Second, Plaintiff insists that the ALJ failed to properly evaluate the combined limiting effect of her alleged fibromyalgia, migraines, carpal tunnel, and obesity. *Id.* at 16–21. Third, Plaintiff avers that the ALJ erred by not incorporating the limitations he found at step three into his step four RFC finding. *Id.* at 21–23. Finally, Plaintiff argues that the ALJ erred by not adequately evaluating Plaintiff's subjective complaints of the limiting effect of her pain. *Id.* at 23–27.

## III.  STANDARD OF REVIEW

### A.  Substantial Evidence

The Court's review of an ALJ's decision is both legal and factual. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence." (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992))).

In determining whether the correct legal standards were applied, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The Court may reverse and remand if the ALJ failed to "apply correct legal standards" or "show ... [he] has done so." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

---

Judge Sweazea's case, Plaintiff offers no valid reason as to how the outcomes of cases in which ALJ Leppala was reversed "should have *any* impact on the issues presented in *this* case." *Id.* (emphasis added). Accordingly, the Court has not considered Plaintiff's exhibit. Plaintiff's counsel would do well to forego filing exhibits like ECF 24-1 in subsequent social security appeals for they have no legitimate persuasive value.

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (emphasis added). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (brackets in original) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "And ... the threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* (internal quotation marks and citation omitted). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "A finding of 'no substantial evidence will be found only whether there is a conspicuous absence of credible choices or no contrary medical evidence.'" *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)) (internal quotation marks omitted).

Under this standard, a court should still meticulously review the entire record, but it may not "reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004)); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the sufficiency of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Therefore, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). Furthermore, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200) (brackets omitted).

Ultimately, if the correct legal standards were applied and substantial evidence supports the ALJ's findings, the Commissioner's decision stands, and Plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin*, 365 F.3d at 1214.

**B.  Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that she is unable to "engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added).

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (citing 20 C.F.R. § 416.920). The claimant bears the burden of proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Williams v. Bowen*, 844 F.2d 748, 750-51, 751 n.2 (10th Cir. 1988). In the first four steps, the claimant must show (1) that "he is not presently engaged in substantial gainful activity," (2) that "he has a medically severe impairment or combination of impairments," and either (3) that the impairment is equivalent to a listed impairment or (4) that "the impairment or combination of impairments prevents him from performing his past work." *Williams*, 844 F.2d at 750-51; *Grogan*, 399 F.3d at 1261.

If the claimant has advanced through step four, the burden of proof then shifts to the Commissioner to show that the claimant nonetheless retains sufficient functional capacity "to perform other work in the national economy in view of his age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146 n.5.

### C.  Residual Functional Capacity

This case particularly concerns the ALJ's RFC findings. "The RFC assessment" performed by the ALJ "is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184, at *8. To make such an assessment, the ALJ must "identify the [claimant's] functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," specifically by addressing the claimant's "remaining exertional and nonexertional capacities" to perform work. *Id.* at *2, *15. In addressing the claimant's exertional capacities, the ALJ must separately consider the claimant's ability to "perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." *Id.* at *15. In considering the claimant's nonexertional capacities, the ALJ must assess the claimant's physical abilities that are "not reflected in the seven strength demands," the claimant's mental abilities, and all other "abilities affected by impairments:"

> Nonexertional capacity considers all work-related limitations ... that do not depend on ... physical strength ... It assesses an individual's abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision).   In addition to these activities, it also considers the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes).

*Id.* at *2, *16-17; 20 C.F.R. § 404.1545(d).

The ALJ is advised that "failure to consider an individual's ability to perform the specific work-related functions *could* be critical to the outcome of a case." SSR 96-8p, 1996 WL 374184, at *10 (emphasis added). "The concern is that, without a function-by-function analysis, an ALJ 'may ... *overlook* limitations or restrictions that would narrow the ranges and types of work an individual may be able to do.'" *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014) (emphasis

added) (quoting SSR 96-8p, 1996 WL 374184, at *11).

An ALJ's failure, however, to fully describe a claimant's ability to perform all "the specific work-related functions" is not by itself reversible error—particularly when the ALJ "did not overlook" the functional limitation complained of and the failure "was not critical to the outcome of the case." *Hendron*, 767 F.3d at 957 (holding that an ALJ's failure to "find explicitly that [claimant] was capable of sitting for six hours during a regular eight-hour" workday was not reversible error because the ALJ nevertheless "did not overlook [claimant's] problems with sitting" and because a failure to make such an explicit finding "was not critical to the outcome of [the] case"). Indeed, in analyzing such "technical omissions in [an] ALJ's reasoning," courts must "exercise common sense," for example, by not needlessly elevating form over substance. *Id.* ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal.  In conducting our review, we should, indeed must, exercise common sense ... [W]e cannot insist on technical perfection." (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012)) (internal quotation marks omitted) (alternation in original)).

## IV.  THE ALJ'S DECISION AND FINDINGS

At step four, the ALJ found that Plaintiff could perform her past relevant work. AR at 27. The ALJ also proceeded to step five of the sequential evaluation to find, in the alternative, that Plaintiff could serve in other representative occupations that exist in significant numbers in the national economy. *Id.* at 27–29. Because he found that Plaintiff was capable of preforming both her past relevant work and work that exists in significant numbers in the national economy, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. *Id.* at 29.

**A.  Steps One Through Three**

The ALJ began by stating that Plaintiff was eligible for Disability Insurance Benefits between her alleged onset date, August 1, 2012, and her date last insured, March 31, 2018. AR at 19. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during that time. *Id.* at 19. At step two, the ALJ found that Plaintiff was severely impaired by her obesity, fibromyalgia, osteoarthritis, "organic mental disorders," and "affective disorders." *Id.* at 20. At step three, the ALJ concluded that none of these impairments alone or in combination equaled the severity of a "listed" impairment. *Id.*[5] In making this finding, the ALJ discussed his findings on Plaintiff's limitations in several categories of nonexertional work-related functions. *Id.* The ALJ found that Plaintiff was moderately limited in understanding, remembering, applying information, interacting with others, concentrating, and persisting or maintaining pace. *Id.* at 21.

**B.  Step Four**[6]

"After careful consideration of the entire record," the ALJ found that Plaintiff had the physical RFC to "perform a limited range of light work," subject to the following limitations: occasionally lifting or carrying twenty pounds; frequently lifting or carrying ten pounds; standing and or walking for up to six hours in an eight-hour workday; sitting for six hours in an eight-hour workday; frequently climbing ramps or stairs; occasionally climbing ladders, ropes, or scaffolds; frequently stooping; occasionally kneeling; frequently crouching; and occasionally crawling. AR

---

[5] "Listed impairments" refer to certain impairments identified in the regulations. 20 C.F.R. § 404.1520(d). When the SSA finds that any of a claimant's impairments meets or medically equals one of those "listed impairments," the SSA will find the claimant disabled irrespective of the claimant's "age, education, and work experience." *Id.*

[6] The Tenth Circuit has described step four of the sequential evaluation process as consisting of three distinct phases. *Winfrey*, 92 F.3d at 1023. In phase one, the ALJ evaluates a claimant's physical and mental RFC. *Id.* In phase two, the ALJ assesses the physical and mental demands of the claimant's past relevant work. *Id.* Last, the ALJ applies the phase one findings to the phase two findings to determine whether, given the claimant's RFC, she could meet the physical and/or mental demands of her past relevant work. *Id.*

at 22. In addition, the ALJ found that Plaintiff had the mental RFC to:

> understand, carry out, and remember simple one-to-three step instructions and make commensurate work-related decisions; respond appropriately to supervision, co-workers, and work situations; deal with routine changes in the work setting; and … maintain concentration, persistence, or pace for up to and including two hours at a time with normal breaks throughout the workday[; and] … limited to occasional interaction with co-workers, supervisors, and the general public.

*Id.* In making these findings, the ALJ considered Plaintiff's own statements about the limiting effects of her symptoms, medical opinion evidence, objective medical evidence, and a third-party function report completed by Plaintiff's mother.

The ALJ first addressed Plaintiff's statements. Plaintiff testified that she was often forgetful, as evidenced by missing appointments and misplacing household objects. *Id.* at 23. Plaintiff also reported that she had difficulty leaving her home and interacting with other people. *Id.* Plaintiff said that she sometimes feels suicidal and sees a therapist once every two or three months. *Id.* Plaintiff claimed that she experiences pain while hugging her children, that she cannot climb stairs, and that she requires assistive devices in the bathroom. *Id.* Plaintiff further testified that she employs a caregiver who "cleans, washes dishes, goes shopping, does laundry, and helps with personal needs." *Id.* Despite her conditions, Plaintiff acknowledged that she was able to take care of her children, with help from her parents. *Id.* at 27 (citing *id.* at 404–11, 422). Plaintiff also stated she could and did complete some household chores. *Id.* At one point, Plaintiff even told a healthcare provider that she cared for two dogs and six cats. *Id.* (citing *id.* at 1800).

Next, the ALJ addressed the medical opinion evidence in the record. At the initial level of Plaintiff's disability assessment, state agency physician Nancy Armstrong, M.D., concluded that Plaintiff could do "light" work and opined that Plaintiff's "allegations [were] partially credible but … not fully supported by medical evidence." *Id.* at 143–44. Upon reconsideration, Ma Fountain, M.D., affirmed Dr. Armstrong's conclusion. *Id.* at 155–56.

At the initial level, state agency consultant Howard Atkins, Ph.D., opined on the extent to which Plaintiff's mental impairments affected her ability to work. *Id.* at 145–46. Dr. Atkins found that Plaintiff could "read, write, understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate short periods, interact adequately with coworkers and supervisors, and respond appropriately to changes in a routine work setting." *Id.*

On reconsideration, state agency consultant Jacob Tendler, M.D., made three notable findings. *Id.* at 161–63. First, Dr. Tendler opined that Plaintiff "should not be exposed to ... detailed instructions" and that Plaintiff could "understand, remember, and carry out a two-step command involving simple instructions." *Id.* at 161. Second, Dr. Tendler found that Plaintiff could "concentrate and maintain persistence on simple tasks ... [,] complete tasks consisting of 1-2-3 step instructions ... [,] maintain extended periods of concentration and attention greater than 2-hour segments ... [, and] maintain attendance and complete a normal workweek [as well as] maintain pace with occasional absences." *Id.* at 162. Third, Dr. Tendler determined that Plaintiff was "capable of interacting with the public but on an infrequent basis ... [and could] tolerate the minimum social demands of simple-task settings." *Id.* In other words, Dr. Tendler wrote, Plaintiff's mental residual functional capacity showed "less than significant limitations." *Id.* at 156. Dr. Tendler further opined that Plaintiff's "medically determinable impairments could reasonably be expected to produce some of [Plaintiff's] alleged symptoms, but that [her] statements/allegations concerning the intensity, persistence and limiting effects of those symptoms [were] partially credible." *Id.*

The ALJ gave "great weight" to the opinions of Drs. Armstrong and Fountain "for light level work, since they [were] based on an overview of the record and [were] well explained." *Id.* at 25. The ALJ also gave "great weight" to Drs. Atkins and Tendler's opinions because "they

[were] well explained and based on an overview of the record." *Id.* at 26. The ALJ further noted

that each of the state agency consultants were "familiar with social security disability standards"

and gave opinions consistent with the record. *Id*. at 25–26.

Additionally, the ALJ considered the objective medical evidence. AR at 24. The ALJ noted

that Plaintiff experienced "joint pain, limb pain, muscle cramps, muscle pain, joint swelling, and

muscle weakness." *Id.* at 24 (citing *id.* at 557, 728, 948, 1059). The ALJ also observed that Plaintiff

had "relatively few fibromyalgia flares" and that medical cannabis helped with her pain. *Id.* (citing

*id.* at 690, 709, 711, 829).

In 2015, Plaintiff was admitted to the emergency room after telling police officers that she

planned to commit suicide. *Id*. at 25 (citing *id.* at 1074). Plaintiff later admitted, however, that she

did not really intend to harm herself. *Id*. (citing *id.* at 1074). Treatment records from 2017 indicated

that Plaintiff's anxiety was relieved with cannabis. *Id.* (citing *id.* at 1478). Since 2015, according

to the ALJ, Plaintiff reported only mild anxiety and denied suicidal thoughts. *Id.* (citing *id.* at 1800–

01). The ALJ further observed that Plaintiff told mental healthcare providers on multiple occasions

that her medications adequately treated her mental health symptoms. *Id.* (citing *id.* at 1522, 1798).

Last, the ALJ considered the function report completed by Plaintiff's mother. Plaintiff's

mother reported that Plaintiff largely stayed in bed all day, only leaving to go to medical

appointments. *Id.* at 413. Plaintiff's mother advised that she and Plaintiff's friends did most of the

work in caring for Plaintiff's children. *Id.* at 414. Plaintiff's mother wrote that Plaintiff's conditions

impaired her ability to care for herself and that Plaintiff never helped with household chores. *Id.* at

414–15. Plaintiff's mother further stated that throughout the day Plaintiff watched movies, played

with her kids, walked, engaged in arts and crafts, cooked, and enjoyed family time. *Id.* at 417. The

ALJ gave this report only "some weight" because it was not consistent with the other evidence in

the record, Plaintiff's mother was not a disinterested witness, and Plaintiff's mother reported more severe limitations than Plaintiff herself claimed. *Id.* at 26.

Relying on the vocational expert's hearing testimony, the ALJ found that Plaintiff could perform her past relevant work as a housekeeping cleaner. *Id.* at 27. Although the ALJ found that Plaintiff could perform her past relevant work, the ALJ also proceeded to step five to determine whether Plaintiff could perform work in other occupations that existed in significant numbers in the national economy. *Id.* at 27–28.

### C.  Step Five

The ALJ began by noting that Plaintiff could perform light physical work, with additional limitations. AR at 28. The ALJ further reported that he asked the "vocational expert whether jobs existed in the national economy for an individual with [Plaintiff's] age, education, work experience, and residual functional capacity." *Id.* Finding the vocational expert's testimony consistent with the Dictionary of Occupational Titles, the ALJ determined that Plaintiff could serve in the following representative occupations: assembler, silver wrapper, sorter-agricultural products, and sandwich board carrier. *Id.* at 28–29. Because Plaintiff could serve in occupations that existed in significant numbers in the national economy, the ALJ found that Plaintiff was not disabled between August 1, 2012, and March 31, 2018, her date last insured. *Id* at 29.

## V.   DISCUSSION

As observed *supra*, Plaintiff argues that the ALJ erred in formulating the RFC at step four of the sequential evaluation process. ECF 24 at 13–27. Because the Court holds that the ALJ did not commit any harmful legal error, the Court affirms the ALJ's decision.

### A. The ALJ Did Not Commit Harmful Legal Error in Evaluating the Medical Opinion Evidence

Plaintiff argues that the ALJ erred in evaluating the medical opinion evidence on three bases. First, Plaintiff says the ALJ erred by failing to either incorporate or explain why he did not incorporate Dr. Tendler's opinion that Plaintiff was limited to performing tasks requiring no more than two-step commands. *See* ECF 24 at 15. Second, Plaintiff argues that the ALJ failed to include Dr. Tendler's opinion that Plaintiff would have "occasional" absences. *See* ECF 24 at 16. Third, Plaintiff insists that the ALJ was required to account in the RFC for the moderate limitations noted by Drs. Tendler and Atkins. ECF 24 at 16.

First, the Court holds that even if the ALJ committed legal error by not incorporating the two-step command limitation into the RFC, such a failure was not harmful. The doctrine of harmless error applies to social security disability cases. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). This doctrine recognizes that some technical errors may be "minor enough not to undermine confidence in the determination" of a case. *Id.* Indeed, it is sometimes "appropriate to supply a missing dispositive finding under the rubric of harmless error" where the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.*

The ALJ did not include Dr. Tendler's two-step command limitation in the RFC. *See* AR at 22, 161. The ALJ *did*, however, describe the hypothetical individual posed to the vocational expert as being limited to "carry[ing] out two-step commands." *Id.* at 58. And the vocational expert testified that a hypothetical individual so limited could perform the duties of all the occupations that the ALJ found that Plaintiff was capable of performing. *Id.* at 27–28, 59. The ALJ was entitled to rely on the vocational expert's testimony. *See* 20 C.F.R. § 404.1560(b)(2), (c)(1) (permitting ALJs to employ the services of vocational experts, who may offer testimony that an ALJ may find

"helpful"). Thus, any legal error caused by the ALJ's omission of the two-step command limitation was harmless. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) ("[W]e will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result." (citing *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)); *see also Hendron*, 767 F.3d at 957 (observing that an ALJ's failure to fully describe a claimant's ability to perform all "the specific work-related functions" is not, by itself, reversible error—particularly when the ALJ "did not overlook" the functional limitation complained of and the failure "was not critical to the outcome of the case").

Second, the Court disagrees that the ALJ failed to adequately account for Dr. Tendler's opinion that Plaintiff would have "occasional absences." *See generally* AR at 161. While an ALJ is not entitled to pick and choose through an uncontradicted medical opinion (choosing only the parts favorable to a nondisability finding), *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004)), the ALJ *is* entitled to resolve any conflicts in the record. *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991)). Although Plaintiff urges the Court to construe in her favor Dr. Tendler's use of the term "occasional," Dr. Tendler emphasized that Plaintiff could "maintain attendance and complete a normal workweek and maintain pace." AR at 162.[7] Moreover, the ALJ specifically addressed whether Plaintiff would be required to miss more work than an employer would typically tolerate and found that "the record as a whole, including [Plaintiff's] treatment

---

[7] Plaintiff insists, without citation, that "occasional means occurring very little to up to 1/3 of the time," under the SSA's regulations. ECF 24 at 16. Plaintiff further asks the Court to interpret "occasional" to strictly mean one-third of the time and not any of the infinite possibilities that exist between "very little" and one third. *See id.* Plaintiff's proposed interpretation, however, is inappropriate, considering Dr. Tendler's clarification that Plaintiff could complete a normal workweek and maintain pace. AR at 162.

records and her response to treatment, [did] not support time off task and absences beyond" an employer's usual tolerance. *Id.* at 29; *Lee v. Colvin*, 631 F. App'x 538, 540–41 (10th Cir. 2015) (holding that an ALJ must explain why he does not accept parts of a medical source's opinion).

Third, Plaintiff complains that the ALJ was required to adopt Drs. Tendler and Atkins's notation that Plaintiff was moderately limited in "[t]he ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" in the RFC. ECF 23 at 16 (citing AR at 143–44, 161–62). The Court disagrees. Drs. Tendler and Atkins issued their opinion using a form document. *See* AR at 144, 161. That form document presents the preparer with a set of questions intended to *help* the preparer "determine the individual's ability to perform sustained work activities." *Id.* In other words, the answers to those questions are *not* the preparer's opinion, which is instead located in the "narrative discussion" section of the form. *Id.* Indeed, the Tenth Circuit has repeatedly held that an ALJ need not account for *any* of the notations made in response to similar assistive questions. *Smith v. Colvin*, 821 F.3d 1264, 1269 n.2 (10th Cir. 2016) ("Ms. Smith questions how the administrative law judge's assessment incorporates the numerous moderate limitations indicated by Dr. Frommelt … This is the wrong question. As discussed above, Dr. Frommelt's notations of moderate limitations served only as an aid to her assessment for residual functional capacity. We compare the administrative law judge's findings to Dr. Frommelt's opinion on residual functional capacity, not her notations of moderate

limitations."); *Fannin v. Commissioner, SSA*, No. 20-7027, 2021 WL 2071076, at *3 (10th Cir. May 24, 2021) (unpublished); *Lee*, 631 F. App'x at 540–41.

In sum and for the foregoing reasons, the Court holds that the ALJ did not make any harmful error in considering the medical opinion evidence in his RFC finding.

### B. The ALJ Adequately Considered the Combined Limiting Effect of Plaintiff's Impairments[8]

Plaintiff contends that the ALJ did not sufficiently consider the combined limiting effect of her conditions. ECF 24 at 17–22. In making his RFC finding an ALJ must "consider the limiting effects of all [of a claimant's] impairment(s), even those that are not severe, in determining [a claimant's] residual functional capacity." 20 C.F.R. § 404. 1545(e). Moreover, an ALJ must consider the *combined effect* of all of a claimant's "medically determinable" impairments. *Wells v. Colvin*, 772 F.3d 1061, 1069 (10th Cir. 2013) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)). "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79F.3d 1007, 1009–10 (10th Cir. 1996) (citing *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984)). "And when an 'ALJ indicates [he] has considered all the evidence'" the practice in the Tenth Circuit is "'to take the ALJ at [his] word." *Bales v. Colvin*, 576 F. App'x 792, 799 (10th Cir. 2014) (quoting *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009)).

The ALJ did not err in considering the limiting effect of Plaintiff's symptoms. The ALJ "considered all" of Plaintiff's medically determinable symptoms. AR at 22; *Bales*, 576 F. App'x

---

[8] Plaintiff appears to interweave several step two arguments into this portion of her briefing, contending that the ALJ should have found certain alleged impairments severe. ECF 24 at 16–21. The Court, however, does not address Plaintiff's step two arguments because the ALJ did not deny benefits at step two and therefore could not have committed a reversible error at step two. *Allman v. Colvin*, 813 F.3d 1326, 1331 (10th Cir. 2016) ("[T]he failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe.").

at 799 (holding that an ALJ's statement that she had "'considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence,'" adequately demonstrated that the ALJ had sufficiently considered the combined limiting effect of Plaintiff's impairments); *Bunch v. Chater*, No. 96-6059, 1996 WL 375348, at *4 (10th Cir. July 5, 1996) (unpublished) ("Though the ALJ did not explicitly evaluate the effects of [the claimant's] mental impairments in combination with the effects of her physical impairments, we feel this failure was not error."). Moreover, the ALJ addressed Plaintiff's mental health, knee pain, fibromyalgia, and obesity in the discussion following his RFC finding. AR at 23–27. And the ALJ discussed the limiting effect of Plaintiff's alleged carpal tunnel syndrome and migraines at step two. *Id.* at 19; *c.f. Endriss v. Astrue*, 506 F. App'x 772, 775–76 (10th Cir. 2012) (unpublished) (holding that an ALJ's decision may be read "as a whole"). Accordingly, the Court holds that the ALJ's decision sufficiently reflects that he considered the combined limiting effect of Plaintiff's impairments.

Plaintiff also specifically complains that the ALJ did not adequately consider the limiting effect of her obesity in combination with her other impairments. ECF 24 at 19–21. The SSA has recognized that "[p]eople with obesity have a higher risk for other impairments, and the effects of obesity combined with other impairments can be greater than the effects of each of the impairments considered separately." SSR 19-2p, 2019 WL 2374244, at *2. "As with any other impairment," the SSA "will explain how [it] reached [its] conclusion on whether obesity causes any limitations." *Id.* at *4. And while the ALJ is required to *consider* these possible effects of obesity, the ALJ is not required to explicitly *discuss* every possible connection, or lack thereof, between obesity and each

"functional limitation" or "other impairment." *Smith v. Colvin*, 625 F. App'x 896, 899 (10th Cir. 2015) (unpublished).

Here, the ALJ considered the limiting effect of Plaintiff's obesity alone and in combination with Plaintiff's other medically determinable impairments. For instance, the ALJ found that there was "no evidence that [Plaintiff's] obesity has affected [her] ability to sustain work activity at the light exertional level" and that there was "no evidence" that Plaintiff's obesity in combination with her other impairments were "significantly greater than the effects of each impairment considered separately." AR 25. The ALJ thus "considered the effects of [Plaintiff's] obesity, pursuant to Social Security Ruling 19-2p." *Id.* Plaintiff's position appears to be that the ALJ should have discussed the combined limiting effect of her obesity against every single one of her other impairments, *see* ECF 24 at 19–21, but the Tenth Circuit has specifically declined to impose such a requirement. *See Smith*, 625 F. App'x at 899 ("declin[ing] to impose" the requirement that "for each piece of evidence" that an ALJ discusses in formulating an RFC, the ALJ must also "note the absence of any evidence that" obesity "resulted in additional functional limitations or exacerbated any other impairment"). Because the ALJ *considered* Plaintiff's obesity in combination with her other impairments, nothing more was required. *Id.*; *see also Bales*, 576 F. App'x at 799 (noting that the practice in the Tenth Circuit is to take an ALJ "at his word" when he states that he has considered evidence).

### C.   The ALJ Was Not Required to Include the Limitations He Found at Step Three in the RFC

As described *supra*, at step three of the sequential evaluation process, the ALJ found that Plaintiff had several moderate limitations in social functioning. AR at 21. Plaintiff argues that the ALJ erred by not accounting for each of those step three limitations in his RFC assessment. ECF 24 at 21–23. "When evaluating a mental impairment at step three, the ALJ utilizes the psychiatric-

review technique described in 20 C.F.R. § 404.1520a," *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013), which requires an ALJ to assess "four broad functional areas:" understanding, remembering, or applying information; interacting with others, concentration or maintain pace; and adapting and managing oneself. 20 C.F.R. § 404.1520a(3)-(4). Importantly, the ALJ's step three mental limitation assessment is not equivalent to an "RFC assessment;" instead its applicability is limited to steps two and three. SSR 96-8p, 1996 WL 374164, at *4. Although severe impairments *must* be reflected in the RFC, the ALJ's step three social functioning analysis "does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." *Beasley*, 520 F. App'x at 754; *see also Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015). Put differently, an ALJ must account for whatever severe mental impairments he finds at step two, but the ALJ need not incorporate each of the limitations he identifies at step three into the RFC.

The ALJ adequately accounted for the severe mental impairments he found at step two. The ALJ found that, mentally, Plaintiff was severely impaired by "organic mental disorders" and "affective disorders." AR at 20. And the ALJ limited Plaintiff to "occasional interaction" with others and to carrying out "simple one-to-three step instructions." *Id.* Moreover, the ALJ discussed the evidence that led him to his conclusion. The ALJ observed that Plaintiff only visited a therapist once every two or three months. AR at 25. The ALJ also acknowledged that, although Plaintiff felt anxious and had a history of mental illness, her symptoms were well controlled with medication and medical cannabis. *Id.* The ALJ further observed that since Plaintiff's 2015 suicide attempt, she had exhibited only mild mental symptoms. *Id*. Because the ALJ accounted for the severe mental impairments he found at step two in the RFC and explained these limitations, the Court holds that the ALJ did not err by not expressly incorporating the mental limitations he identified at step three

in the RFC. *See Beasley*, 520 F. App'x at 755 (holding there was no reversible error where the ALJ accounted for plaintiff's severe impairments and explained his RFC assessment).

### D.  The ALJ Properly Evaluated Plaintiff's Complaints About the Limiting Effect of Her Pain Producing Impairments

Plaintiff argues that the ALJ did not adequately explain why he found her statements regarding the limiting effect of her pain to be inconsistent with the record. ECF 24 at 23–27.

"In determining whether an individual is disabled," the SSA considers "all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3P, 2016 WL 1119029, at *3. Importantly, "an individual's *statements* of symptoms alone are not enough to establish the existence of a physical ... impairment or disability." *Id.* (emphasis added). In assessing a claimant's symptoms, the SSA employs a two-step analysis. First, the SSA considers "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* Second, once such an impairment is established, the SSA "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.*

"In considering the intensity, persistence, and limiting effects of an individual's symptoms," the SSA examines "the entire case record, including the objective medical evidence; an individual's statements ...; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. Notably, "so long as the ALJ 'sets forth the specific evidence he relies on in evaluating the claimant's credibility, he need not make a 'formalistic factor-by-factor recitation of the evidence.'" *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166–67 (10th Cir. 2012) (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). In

reviewing an ALJ's credibility determination, the Court must keep in mind that "[c]redibility determinations are peculiarly the province of the finder of fact" and should not be upset "when supported by substantial evidence." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

Taking careful precaution to avoid reweighing the evidence, *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014), the Court holds that the ALJ did not commit reversible error in evaluating Plaintiff's statements regarding the limiting effect of her pain. The ALJ correctly applied the SSA's two-step analysis for evaluating a claimant's statements. The ALJ first found that Plaintiff's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms" but that that her statements regarding the "intensity, persistence and limiting effect" of her symptoms were not consistent with the record. AR at 23; *see also* SSR 16-3P, 2016 WL 1119029, at *3–4. The ALJ began his supporting analysis by addressing Plaintiff's account of her symptoms. The ALJ recounted that Plaintiff reported walking with cane, using assistive devices in the shower, having difficulty standing for a long time, climbing stairs, and experienced negative side effects caused by her medication. AR at 23. The ALJ also observed that Plaintiff's fibromyalgia flared infrequently, was well treated with medical cannabis, and was alleviated with increased exercise. *Id.* at 23–24 (citing *id.* 690, 709, 711, 829, 1558). Regarding Plaintiff's knee pain, the ALJ noted that after a 2018 treatment, a medical provider noted that Plaintiff had no joint pain, swelling, limb or muscle pain, nor muscle weakness. *Id.* at 24 (citing *id.* at 1571). In other words, the ALJ "set forth the specific evidence" he relied on in evaluating the limiting effect of Plaintiff's alleged pain. *See Keyes-Zachary*, 695 F.3d at 1166–67. The Court holds, therefore, that the ALJ did not err in his consideration of Plaintiff's statements on the limiting effect of her pain.

## VI.  CONCLUSION

For the foregoing reasons, the Court holds that the ALJ applied the correct legal standards and that his findings and decision were supported by substantial evidence.

**IT IS THEREFORE ORDERED** that the Commissioner's final decision is **AFFIRMED**, that Plaintiff's Motion is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*